[No. 13741. In Bank. — June 18, 1892.]

## HOME FOR THE CARE OF THE INEBRIATES, APPELLANT, *v.* CHRISTIAN REIS, TREASURER, ETC., RESPONDENT.

HOME FOR THE CARE OF INEBRIATES — RECOVERY OF FINES PAID TO COUNTY TREASURER — MANDAMUS. — There is no law which specially enjoins it as a duty of the treasurer of the city and county of San Francisco, resulting from an office, trust, or station, to pay to the Home for the Care of the Inebriates of San Francisco the amount of any fines collected by the police courts and turned over to him, and *mandamus* will not lie to compel him to pay over to the Home the amount of any fines so collected, although the clerk of the police judge's court may have turned over to the treasurer the moneys which he is enjoined by the act of March 17, 1876, to pay directly to the officers of the Home.

ID. — PAYMENT OF FINES FOR DRUNKENNESS — REPEAL OF STATUTE. — The act of March 17, 1876 (Stats. 1875–76, p. 325), providing that the fines and forfeitures, not exceeding eight hundred dollars in the aggregate in any one month, imposed and collected by the police judge's court in San Francisco for drunkenness, shall be paid by the clerk of such court to the Home for the Care of Inebriates, was not repealed by the act of March 5, 1889 (Stats. 1889, p. 62), reorganizing the police court, and providing that all fines and forfeitures imposed by such court should be paid into the treasury of the city by the clerk of each department once a week, and repealing all inconsistent acts and parts of acts, but containing no special reference to the act of March 17, 1876.

ID. — REPEALS BY IMPLICATION — SPECIAL STATUTE WHEN NOT REPEALED BY GENERAL LAW — REPEAL OF INCONSISTENT ACTS. — Repeals by implication are not favored, and the repugnancy between two statutes should be very clear to warrant a court in holding that the later in time repeals the other, when it does not, in terms, purport to do so. This rule has peculiar force in the case of laws of special and local application, which are never to be deemed repealed by general legislation, except upon the most unequivocal manifestation of intent to that effect, by language showing that the attention of the legislature was called to the special act, and that the general act was intended to embrace the special cases; and the mere fact that the general act contains a clause repealing acts inconsistent with it does not diminish the force of the rule.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Tilden & Tilden,* for Appellant.

*John H. Durst,* and *George Flournoy, Jr.,* for Respondent.

SHARPSTEIN, J. — Appellant applied to the superior court of the city and county of San Francisco for a writ of mandate to compel respondent, as treasurer of said city and county, to pay to the petitioner certain moneys received by him in his official capacity. A general demurrer to the petition was interposed and sustained, and this appeal is from the judgment thereupon entered, denying the relief sought.

A writ of mandate may be issued by any court, except a justice's or police court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. (Code Civ. Proc., sec. 1035.)

The contention of appellant is, that the law specially enjoins upon respondent, as a duty resulting from his office as treasurer, the payment to appellant the moneys demanded of him by it, by reason of certain acts of the legislature, the first of which was approved April 1, 1870, and provides, among other things, that "the Home for the Care of the Inebriates of San Francisco shall always be kept open for the reception and care of inebriates, both male and female, of every nationality and sect, free of charge for their support, care, or medical attendance, while they necessarily remain therein"; and that "any police judge or magistrate of the city and county of San Francisco is hereby empowered to commit any person whom he shall convict of habitual intemperance to said Home."

But the act mainly relied on in support of appellant's contention is an act entitled "An act to provide for the care and maintenance of inebriates and certain insane persons in the city and county of San Francisco," approved March 17, 1876, which provides that "the fines and forfeitures, not exceeding eight hundred dollars in the aggregate in any one month, imposed and collected by the police judge's court in and for the city and county of San Francisco, from persons arrested for being drunk, or under the influence of liquor, shall be, by

the clerk of said police judge's court, immediately paid to the president, secretary, and treasurer, or a majority of them, at the Home for the Care of Inebriates of said city and county, for the support and maintenance of said Home for the Care of Inebriates, and the construction and improvements of a building for said Home for the Care of Inebriates"; and that "all persons in said city and county charged with being insane, and pending their examination, or found to be insane and *en route* for a state insane asylum, shall be placed in the said Home, . . . . without charge to said city and county."

The treasurer of the city and county of San Francisco is not by this act enjoined, nor even authorized, to receive or disburse any of said moneys, but the duty of paying said moneys to the officers of the Home is expressly imposed upon the clerk of the police judge's court, and he is required to pay it to them *immediately.*

Section 75 of article VI. of the Consolidation Act requires that "all fines, penalties, and forfeitures imposed for offenses committed within the said city and county shall be received by'the clerk or magistrate of the respective court, and paid into the treasury thereof as a part of the police fund." And since the passage of the act of March 17, 1876, it has been the duty of said clerk or magistrate to pay into said treasury any excess over eight hundred dollars received in any one month by them for fines, etc.

Whatever sum or sums the treasurer received from that source became at once a part of the police fund, out of which the fixed salaries of police captains and officers, chief of police, police judge, and clerk of the police court could alone be paid.

It is the duty of the treasurer to safely keep all moneys belonging to or paid into the treasury, and not to pay out any part of said moneys except upon demands authorized by the Consolidation Act. By an act approved March 5, 1889, the clerk of each department of the police court is required to pay into the treasury of

said city and county, once a week, all fines and for-
feitures imposed by said court.  This act is clearly re-
pugnant to that which required the clerk of said court,
to pay an amount, not exceeding eight hundred dollars
in any one month, of the fines and forfeitures imposed
and collected by the police court from persons arrested
for being drunk or under the influence of liquor, imme-
diately to certain officers of appellant.  Besides, the act
of 1889 contains a clause repealing all acts and parts of
acts in conflict with any of its provisions.  But what-
ever effect may be given to this latter act, there is not,
nor ever has been, any law which specially enjoins it as
a duty of the respondent, resulting from an office, trust,
or station, to pay to appellant any money from the treas-
ury, no matter from what source received.

Judgment affirmed.

PATERSON, J., concurred.

DE HAVEN, J., concurring. — I concur in the judg-
ment of affirmance, upon the ground that *mandamus* is
not the proper remedy, but I dissent from so much of
the opinion of Mr. Justice Sharpstein as holds that the
act of March 17, 1876 (Stats. 1875–76, p. 325), is re-
pealed by the later act of March 5, 1889 (Stats. 1889, p.
62); and upon this latter point I adopt as a correct state-
ment of the law the opinion of Mr. Commissioner Bel-
cher, prepared for the court upon the former submission
of this case.  In that opinion it is said: —

"By an act of the legislature, approved April 1, 1870
(Stats. 1869–70, p. 585), it was provided that 'the
Home for the Care of the Inebriates of San Francisco
shall always be kept open for the reception and care of
inebriates, both male and female, of every nationality
and sect, free of charge for their support, care, or medi-
cal attendance, while they necessarily remain therein';
and that 'any police judge or magistrate of the city and
county of San Francisco is hereby empowered to com-
mit any person whom he shall convict of habitual in-
temperance to said Home.'

" By another act, entitled ' An act to provide for the care and maintenance of inebriates and certain insane persons in the city and county of San Francisco,' approved March 17, 1876 (Stats. 1875–76, p. 325), it was provided that 'the fines and forfeitures, not exceeding eight hundred dollars in the aggregate in any one month, imposed and collected by the police judge's court in and for the city and county of San Francisco, from persons arrested for being drunk or under the influence of liquor, shall be by the clerk of said police judge's court immediately paid to the president, secretary, and treasurer, or a majority of them, of the Home for the Care of Inebriates of said city and county, for the support and maintenance of said Home for the Care of Inebriates, and the construction and improvements of a building for said Home for the Care of Inebriates '; and that 'all persons in said city and county charged with being insane, and pending their examination, or found to be insane and *en route* for a state insane asylum, shall be placed in said Home, and shall be cared for by the officers thereof while in said Home, without charge to said city and county.'

" The petitioner is now, and has been for more than twenty-five years, an eleemosynary corporation, duly incorporated and existing under the laws of this state, and situated in the city and county of San Francisco. It has a duly elected, qualified, and acting president, secretary, and treasurer, and is the owner of a lot and building thereon, in the said city and county, which is now, and has been for several years, used as a home for inebriates and insane persons committed to its care. It has always, since the passage of the aforesaid acts, fully complied with their provisions, and has at all times kept its Home open for the reception and care of inebriates, both male and female, of every nationality and sect, free of charge for their support, care, and medical attendance, and has received therein all persons in said city and county charged with being insane, and pending their examination, and all persons found to be insane

and *en route* to an insane asylum, and has cared for, supported, and furnished medical attendance to them, without charge. It now has under its care a large number of persons who are habitually intemperate, and others who are insane, and the money appropriated by the act of March 17, 1876, is necessary to pay for the maintenance of the said Home.

"Between the fifth day of March and the first day of November, 1889, certain fines and forfeitures, the amount for each month being specifically named, were by the police court of the city and county of San Francisco imposed upon and collected from persons arrested for being drunk or under the influence of liquor; and all of the moneys so collected were paid into the hands of the respondent, as treasurer of the said city and county, and are now in his possession. Prior to the commencement of this proceeding, petitioner duly demanded of respondent payment of all the said several sums of money, except the amounts in excess of eight hundred dollars, but respondent refused, and has ever since refused, to pay the same, or any part thereof, to it, or to any of its officers, or to any one in its behalf. Wherefore judgment is asked, commanding such payment to be made.

"The respondent contends that the act of March 17, 1876, was repealed by an act approved March 5, 1889. (Stats. 1889, p. 62.)

"The last-named act is entitled 'An act to create a police court in and for the city and county of San Francisco, state of California,' and the provisions relied upon as effecting the repeal are sections 10 and 13, which read as follows:—

" 'Sec. 10. All fines and forfeitures imposed by said court shall be paid into the treasury of said city and county, by the clerk of each department, once a week.'

" 'Sec. 13. All acts and parts of acts that are in conflict with the provisions of this act are hereby repealed.'

"It will be observed that no special reference is made to the act of March 17, 1876, and the repeal, if any was

effected, was therefore by implication. But the general and well-settled rule is that repeals by implication are not favored.

" Judge Cooley, in his work on Constitutional Limitations, 6th ed., 182, states the law as follows: 'Repeals by implication are not favored; and the repugnancy between two statutes should be very clear to warrant a court holding that the later in time repeals the other, when it does not in terms purport to do so. This rule has peculiar force in the case of laws of special and local application, which are never to be deemed repealed ·by general legislation except upon the most unequivocal manifestation of intent to that effect.'

" In Endlich on the Interpretation of Statutes, sec. 223, this language is used: ' A general act is to be construed as not repealing a particular one, that is, one directed towards a *special object* or a *special class* of objects. . . . . Having already given its attention to the ·particular subject and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment, unless that intention is manifested in explicit language, or there be something which shows that the attention of the legislature has been turned to the special act, and that the general one was intended to embrace the special cases within the previous one. . . . . The general statute is read as silently excluding from its operation the cases which have been provided for by the special one. . . . . The fact that the general act contains a clause repealing acts inconsistent with it does not diminish the force of this rule of construction.' (And see *People* v. *Quigg,* 59 N. Y. 83; *Merrill* v. *Gorham,* 6 Cal. 42; *Crosby* v. *Patch,* 18 Cal. 439.)

" Under the law as thus declared, can the respondent's contention be sustained ? We do not think it can. The police judge's court was created by the Consolidation Act of the city and county of San Francisco, passed in 1856, and it was therein provided that the clerk of the court should ' receive and pay weekly into the treasury

of the city and county all fines imposed by said court.'
The act of March 5, 1889, was in effect an amendment
of the Consolidation Act, and though it slightly changed
the name of the old police court, it was not intended,
and did not have the effect, to abolish that court, but only
to add another judge thereto, and to reorganize the court
thus increased in numbers, by dividing the same into
departments, with a presiding judge. (*Ex parte Lloyd,*
78 Cal. 421.)

"The legislature had no power, by a local or special
law, to create new offices, or to prescribe the powers and
duties of officers (Const., art. IV., sec. 25, subd. 28); nor
did it attempt to do so. It simply, so far as the duties
of the clerk as to paying over fines were prescribed,
repeated, in substance, the language of the old act.

"In this we see nothing to indicate that the attention
of the legislature was turned to the special act of March
17, 1876, or that there was any intention or purpose to
repeal it.

"It results, that when the respondent received the
money in controversy, he received and held it for the
use of petitioner."

But conceding this to be so, *mandamus* is not the proper
remedy, and if defendant, or the city and county of San
Francisco, wrongfully withholds money which belongs to
the petitioner, his remedy is by action in the ordinary
course of law.

GAROUTTE, J., and BEATTY, C. J., concurred.

McFARLAND, J., dissenting.—I dissent. I concur in
the opinion of Mr. Justice De Haven, except as to the
remedy.

HARRISON, J., concurring.—The appellant is a private
corporation in the city and county of San Francisco,
under the management of officers entirely disconnected
with the municipal government, and asks for a mandate
against the treasurer of said city and county, directing
to pay to it a sum of money to which it claims a right

under the provisions of the act of March 17, 1876. (Stats. 1876, p. 325.) It may be very seriously questioned, whether, under the former constitution, the legislature had the power to compel a donation of the city's money to a private corporation, or to direct the payment in each month to such corporation of a specific sum of money, irrespective of any benefit or service rendered by it to the city. Without passing upon this question, the act above referred to is, however, obnoxious to the charge of violating section 31 of article IV. of that constitution, within the principles declared in the cases of *San Francisco* v. *Spring Valley W. W.*, 48 Cal. 493; *Waterloo Turnpike Road Co.* v. *Cole*, 51 Cal. 381; *Omnibus R. R. Co.* v. *Baldwin*, 57 Cal. 160. The acts of April 7, 1870 (Stats. 1869–70, p. 585), prescribing the powers and duties of the officers of the appellant, which it claims affords the consideration for which it was authorized to receive the money directed to be paid under the act of 1876, was clearly without the power of the legislature to enact. The legislature had no power to confer such special privileges upon any corporation, or to pass any special act conferring authority upon it, or prescribing the powers and duties of its officers. The attempt by these acts to impose any duty or obligation upon the plaintiff was without the constitutional authority of the legislature, and the plaintiff, by virtue of said acts, neither acquired any right nor became subject to any duty.

The provisions of section 10 of the act of March 5, 1889 (Stats. 1889, p. 62), that all fines and forfeitures imposed by the police court shall be paid into the treasury of the city and county of San Francisco, by the clerk thereof, is in direct harmony with section 16 of article XI. of the present constitution, which directs all municipal moneys to be paid to the treasurer, and operates as a direct repeal of that portion of the act of 1876, which authorized the clerk of the police court to pay certain moneys to the appellant.

By bringing this action against the treasurer, the appellant impliedly admits that the act of 1876 is repealed so

far as it directs the payment to it by the clerk of the fines collected by him, but it contends that the other portion of the act is left in force. Inasmuch, however, as under the provision of the constitution above referred to the legislature could not have authorized the payment of those fines to any other officer than the treasurer of the city and county, it must be held that the entire act is repealed, even if it had any validity when originally enacted. After the money has once been received into the treasury, the treasurer is not authorized to pay out any portion thereof, except as authorized by law, and after the demand therefor shall have been duly audited. Section 82 of the Consolidation Act provides that " no payment can be made from the treasury or out of the public funds of said city and county, unless the same be specifically authorized by this act, nor unless the demand which is paid be duly audited, as in this act provided, and that must appear upon the face of it." Section 84 of the same act declares that " every demand upon the treasury . . . . must, before it can be paid, be presented to the auditor of the city and county, to be allowed, who shall satisfy himself whether the money is legally due and remains unpaid, and whether the payment thereof from the treasury of the city and county is authorized by law, and out of what fund. . . . . No demand can be approved, allowed, audited, or paid, unless it specify each several item, date, and value composing it, and refer to the law by title, date, and section authorizing the same." It is not alleged by the appellant that the claim which it asks that the treasurer be directed to pay was in any respect audited, as above provided.

The provision in section 10 of the act of 1889, directing the clerk of the police court to pay these moneys into the treasury, is not the creation of any new office, or the conferring of any additional powers upon an existing officer, but a mere direction to him for the disposition of the moneys which he may receive. Nor did the provisions of the act of 1876, even if that act was constitutional, create a contract between the appellant and

the city, or give to the appellant any rights or privileges which could not at any time thereafter be revoked by the legislature. It was but an act of legislation, subject to repeal at the will of the body which enacted it.

For these reasons, as well as for those contained in the opinion of Mr. Justice Sharpstein, the judgment should be affirmed.